UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAISY PATE | CIVIL ACTION |
| VERSUS | NO. 13-6366 |
| PONTCHARTRAIN PARTNERS, LLC | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

In this employment discrimination case, plaintiff Daisy Pate asserts one federal claim and five state law claims against her former employer, Pontchartrain Partners, LLC ("Pontchartrain"). Pate alleges that defendant (1) terminated her employment because she was pregnant, in violation of Title VII, 42 U.S.C. § 2000e et seq.; (2) breached an employment contract with her; (3) breached the implied covenant of good faith and fair dealing; (4) wrongfully discharged her; (5) intentionally inflicted emotional distress; and (6) committed fraud, deceit and misrepresentation. Complaint, Record Doc. No. 1.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. Record Doc. No. 8.

Pontchartrain filed a Motion for Partial Summary Judgment, seeking dismissal of plaintiff's sex discrimination claim only. Defendant argues that it is not an "employer" for purposes of Title VII because it did not have at least 15 employees for each working day in each of twenty or more calendar weeks in the calendar year of plaintiff's

termination or in the preceding year.  See 42 U.S.C. § 2000e(b).  In support of its motion, Pontchartrain submits the affidavit of its office manager, Mary LeBlanc, and its verified payroll records for the years 2011 and 2012.  Record Doc. No. 11.

Pate filed a timely opposition memorandum, supported by her own affidavit and a verified copy of an e-mail from LeBlanc.  Record Doc. No. 13.  Defendant received leave to file a reply memorandum, to which it attached two unverified exhibits and one certified exhibit containing copies of Pontchartrain's corporate filings with the Louisiana Secretary of State.  Record Doc. Nos. 14, 16, 17.  Pate received leave to file a reply memorandum in opposition to defendant's reply.  She did not object to defendant's unverified exhibits.  Record Doc. Nos. 18, 19, 20.

For the following reasons, IT IS ORDERED that defendant's motion for partial summary judgment is DENIED.

A.     Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

2

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations

4

. . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

    B.    **Material Facts Are in Dispute Whether Defendant Is an "Employer" for Title VII Purposes**

"Title VII of the Civil Rights Act of 1964 makes it unlawful 'for an employer . . . to discriminate,' inter alia, on the basis of sex." Arbaugh v. Y & H Corp., 546 U.S. 500, 504 (2006) (quoting 42 U.S.C. § 2000e-2(a)(1)). "To spare very small businesses from Title VII liability, Congress provided that: '[t]he term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .'" Id. at 504-05 (quoting 42 U.S.C. § 2000e(b)). According to Pate's complaint, her employment was terminated on September 28, 2012. It is undisputed that 2011 and 2012 are the preceding and current calendar years, respectively, for purposes

of determining the number of defendant's employees. Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 205 (1997).

The term "'employee' means an individual employed by an employer," 42 U.S.C. § 2000e(f), a definition which "'is completely circular and explains nothing.'" Juino v. Livingston Parish, 717 F.3d 431, 434 (5th Cir. 2013) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992)).[1]

> "Recognizing the circularity in such a definition, the Supreme Court explained that 'when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" The Supreme Court has stated,
>
> > In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. (quoting Darden, 503 U.S. at 323-24; Arbaugh v. Y & H Corp., 380 F.3d 219, 226 (5th Cir. 2004), rev'd on other grounds, 546 U.S. at 500) (internal citations omitted).

---

[1]Darden dealt with who qualifies as an employee for purposes of the Employee Retirement Income Security Act, which defines "employee" in the same way as Title VII. 29 U.S.C. § 1002(6).

"Two steps are required to determine whether a defendant is an employer under [Title VII]: (1) the defendant must fall within the statutory definition, and (2) there must be an employment relationship between the plaintiff and the defendant." Roque v. Jazz Casino Co. LLC, 388 F. App'x 402, 404-05 (5th Cir. 2010) (citing Deal v. State Farm Cnty. Mut. Ins. Co., 5 F.3d 117, 118-19 & n.2 (5th Cir. 1993)).  It is undisputed that Pate was an employee of Pontchartrain, satisfying the second step, but the parties disagree whether defendant falls within the statutory definition.

The "threshold number of employees for application of Title VII is an 'element of a plaintiff's claim for relief.'" Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 357 (5th Cir. 2006) (quoting Arbaugh, 546 U.S. at 516); accord Juino, 717 F.3d at 433 n.1.  Thus, Pate bears the burden of proof to show that defendant is an "employer" as defined by Title VII.  The vast majority of the evidence on this issue is solely within defendant's possession, custody and control.

Pontchartrain has submitted its payroll records for the two relevant years. Defendant's Exhs. A and B, payroll records for 2011 and 2012, Record Doc. Nos. 11-4 and 11-5.  LeBlanc attests that these "payroll records accurately reflect the number of employees [Pontchartrain] had during the 2011 and 2012 calendar years."  Defendant's Exh. C, LeBlanc affidavit, Record Doc. No. 11-6.

Defendant argues that use of the "payroll method," meaning its evidence of the employees reflected on its biweekly payroll records, establishes that it did not have 15

or more employees in each of twenty or more calendar weeks in either 2011 or 2012. See Walters, 519 U.S. at 206 ("[T]he test for when an employer 'has' an employee is . . . generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll."). "[W]hat is ultimately critical under [this] method is the existence of an employment relationship, not appearance on the payroll; an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law would not count toward the 15-employee minimum."). Id. at 211 (citing Darden, 503 U.S. at 323-24). Pontchartrain's payroll records and LeBlanc's affidavit show that defendant had no payroll periods during 2011 in which it had 15 or more employees, and it had only one payroll period during 2012 in which it had at least 15 employees.

In response to defendant's evidence, Pate presents a verified copy of an e-mail she received from LeBlanc dated November 20, 2012, addressed to Pate and about 28 other persons, in which LeBlanc refers to the upcoming year-end and states: "In an effort to avoid lost W2's and 1099's, I am attaching an Employee Contact/Emergency Contact form to be updated by you. This will also keep your employee file current if any of this information has changed . . . ." Plaintiff's Exh. B, e-mail from LeBlanc, Record Doc. No. 13-2 (emphasis added). Pate notes that eight of the addressees (Ana Petkova, Avis Gaines, Anuk Withers, Daniel Bollinger, Charles Brannon, Ryan Buck, Patrick Hammet and Steven Norton) whom LeBlanc characterized as "employees" in this e-mail do not

8

appear in the payroll records that Pontchartrain submitted to the court. Pate also states in her memorandum (but not in her affidavit) that Rodney Greenup, Danny Blanks, Tim Jarquin and Bart Cook, who were "cc'd" on LeBlanc's e-mail, are or at one time were members or managers of the company. She admits she does not know whether they were employees at the time of the e-mail. Finally, Pate avers in her affidavit that she "worked with" Withers and Hammet while she was employed by Pontchartrain.

Based on this slender evidence, plaintiff argues that the absence of Petkova, Gaines, Withers, Bollinger, Brannon, Buck, Hammet and Norton from defendant's payroll records is not dispositive of their status as employees. She contends that her evidence suggests that several other persons may have been employees during the two relevant calendar years and that defendant may have had 15 or more employees for the requisite number of weeks. She asks the court to deny Pontchartrain's motion for partial summary judgment or, at the least, to allow her to conduct limited discovery into the 15-employee issue before the court rules on the motion. She contends that the first time the issue has been raised in this litigation was when defendant filed its summary judgment motion, so she has not undertaken any discovery about the issue.

Pontchartrain filed a reply memorandum in which it asserts that Petkova, Gaines, Withers, Bollinger, Brannon, Buck, Hammet and Norton were all independent subcontractors, or employees of independent subcontractors, when they worked for defendant. However, Pontchartrain did not submit any <u>admissible evidence</u> to support

9

this argument. Pontchartrain submitted unverified copies of subcontractor agreements with six of these eight persons and of IRS Form W-9 Request for Taxpayer Identification Numbers, but it has provided no affidavit or other admissible evidence to verify these documents or to support its argument that each person was an independent contractor.

These exhibits are hearsay on their face, without any evidence of or legal basis for establishing an exception to the hearsay rules. Inadmissible hearsay fails to create a genuine issue of material fact. Yancy v. U.S. Airways, Inc., 469 F. App'x 339, 342 n.1 (5th Cir. 2012). The purported statements of fact by defendant's attorney in its reply memorandum are also not evidence. Fifth Circuit Pattern Jury Instructions (Civil) 3.1 (West 2009); D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 457 (5th Cir. 2010); United States v. Thomas, 627 F.3d 146, 158 (5th Cir. 2010). "Needless to say, unsubstantiated assertions are not competent summary judgment evidence." Garcia v. LumaCorp, Inc., 429 F.3d 549, 555 (5th Cir. 2005) (quotation omitted).

Even if all of defendant's exhibits were verified, I find that the evidentiary record is insufficient to grant summary judgment in defendant's favor. Although the payroll records indicate that none of these eight persons was an employee, plaintiff's evidence suggests, and Pontchartrain has acknowledged, that each person worked for it at some time during the relevant time period. Defendant contends that all eight were independent subcontractors. In the Fifth Circuit, courts

> apply the "economic realities/common law control test," a variation of the common law agency test, in determining whether a party is an employee or an independent contractor. The economic-realities portion of the test asks whether putative employees, as a matter of economic reality, are dependent upon the business to which they render service. The common law control portion of the test, which courts should emphasize over the economic realities portion, assesses the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed.

Juino, 717 F.3d at 434-35 (quotations and citations omitted). The Fifth Circuit listed 11 factors to consider in deciding whether a person is an independent contractor or an employee. "The hybrid economic realities/common law control test' is necessarily a fact-specific inquiry . . . ." Muhammad v. Dallas Cnty., 479 F.3d 377, 382 (5th Cir. 2007). I find that defendant's evidence fails to address many of these factors and that material fact questions remain in dispute whether any of the eight persons identified above were independent contractors during the relevant years.

As to Greenup, Blanks, Jarquin and Cook, Pontchartrain has produced certified records from the Louisiana Secretary of State showing that each of them was a member and/or a member-manager of the limited liability company. However, defendant again attached to its reply memorandum an unverified, inadmissible Operating Agreement in an attempt to show that its members shared in profits and losses, had hiring and firing power and were owners, rather than employees, of the company.

Neither party has cited, and my own research has not located, any decisions addressing whether the members of a limited liability company can also be employees.

I find that the reported cases concerning whether the directors/shareholders of closely held corporations and of professional corporations and the owners of sole proprietorships are employees are analogous. These cases rely on similar indicia of control as the independent contractor cases to determine "employee" status.

> In Clackamas [v. Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448, 451 (2003)], the Supreme Court addressed the issue of whether physicians who engaged in medical practice as shareholders and directors of a professional corporation should be counted as "employees" for purposes of the ADA.[2] The Court noted that the common law agency test factors were not directly applicable because the Court did not have to distinguish between independent contractors and employees. The Court remarked, however, that the "common-law element of control is the principal guidepost that should be followed." The Court then described six factors relevant to determining whether a director is an employee and explained that "the answer to whether a shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no factor being decisive.'"

Juino, 717 F.3d at 438 n.3 (quoting Clackamas, 538 U.S. at 448, 451) (citing Clackamas, 538 U.S. at 442, 445 n.5).

The Third Circuit in Mariotti and the First Circuit in De Jesus applied the same analysis set forth in Clackamas to the shareholder-directors of a closely held corporation.

---

[2]Clackamas concerned the Americans with Disabilities Act, not Title VII. This distinction is without significance. . . . Because Title VII's definition of employee is the same as the ADA's definition, see 42 U.S.C. §§ 2000e(f), 12111(4), and because the EEOC's guidelines, on which the Clackamas Court relied, apply to coverage under Title VII, the [Age Discrimination in Employment Act], the ADA, and the Equal Pay Act, we conclude that the analysis set out in Clackamas applies to Title VII as well.

Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 765-66 (3d Cir.), cert. denied, 134 S. Ct. 437 (2013) (citing Clackamas, 538 U.S. at 444 n.3, 449 n.7; De Jesus v. LTT Card Servs., Inc., 474 F.3d 16, 24 (1st Cir. 2007)).

Mariotti, 714 F.3d at 765-66; De Jesus, 474 F.3d at 24; see also Smith v. Castaways Family Diner, 453 F.3d 971, 977-79 (7th Cir. 2006) (applying same test to sole proprietorship); McCarty v. Southland Builders & Assocs. Inc., No. 05-0497, 2007 WL 963202, at *5-6 (W.D. La. Mar. 28, 2007) (applying same test to defendant's sole owner/shareholder). Neither the admissible documents that Pontchartrain has produced from the Secretary of State nor the admissible payroll records are sufficient evidence for the court to conclude that Greenup, Blanks, Jarquin or Cook were not employees during 2011 or 2012.

Pontchartrain has attempted to introduce evidence to establish that it is not an employer, but has failed to produce sufficient admissible evidence. Viewing the evidence in the summary judgment record in the light most favorable to Pate, I must conclude that the evidence does not establish a set of undisputed material facts on which it can be determined as a matter of law that she will be unable to prove that Pontchartrain had 15 or more employees during the relevant time period.

Although Pate's current evidence on this element of her Title VII case is weak, "[w]hether [her] allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact." Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005) (citations omitted); see also Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge . . . [when] ruling on a motion for summary judgment . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.").

On the current record, Pontchartrain has not produced admissible evidence to meet its burden under Rule 56. The evidence that Pate needs to establish that defendant was an "employer" for Title VII purposes is in defendant's sole control. She has sought additional time to conduct discovery on this issue, which she asserts was raised for the first time in defendant's summary judgment motion. In these circumstances, I find that granting summary judgment is not appropriate. Fed. R. Civ. P. 56(d), (e). Accordingly, IT IS ORDERED that defendant's motion for partial summary judgment is DENIED.

New Orleans, Louisiana, this \_\_\_5th\_\_\_ day of June, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE